This video was recorded on February 20, 2021 at the Facebook office.  I am sorry for the inconvenience. I am sorry for the inconvenience. I am sorry for the inconvenience. I am sorry for the inconvenience. I am sorry for the inconvenience. Our next case this morning is number 17-1429 ZKey Investments, LLC v. Facebook, Inc. Mr. Heim. Thank you, Your Honor. May it please the Court, Michael Heim for Appellant ZKey. I will start by road mapping my argument today. The District Court committed two fundamental errors in its Summary Judgment Ruling on the 101 eligibility issue. With respect to Step 1, the District Court's characterization ignored the improvements in the claimed invention, and in particular, the requirement that allowed each user Is it fair to say that Claims 1-3 and 10-11 are representative? It is, Your Honor. Both sides seen it. I believe that is true, Your Honor. The District Court's characterization ignores the claimed improvements, which is to allow each user to have access control over each of its data elements that are stored in the database management system, and secondly, to allow the users to customize the contents of their profile. The District Court's characterization also did not account for its own findings regarding the purpose of the invention at Appendix A-11 and 12. With respect to Step 2, the District Court improperly found that the claims cover purely conventional computer functions without citing any evidence, and it disregarded the prosecution history evidence that identified the advancement embodied in the claims, and that inventive concept was not abstract, and it constituted something more than the abstract idea articulated by the District Court. The District Court also failed to properly consider the declaration of some re-judgment. I'll start with Step 2. The 204 patent claims do not merely cover computerizing human activity. They don't simply claim using a computer to store and share user profile data. Instead, the claims involve an inventive step beyond the prior computer-based technology implementations that were described in the background of the specification. You argue that the District Court didn't account for 204's teaching of, quote, electronically associating individual data elements, and you cite to the spec which discusses data encryption. What evidence suggests that the described encryption is any different from generic encryption or requires something more than a generic computer to monitor, which really I think is the focus here. The data is stored with two different associations. Each data element is stored with two different associations. One association identifies each data element with a respective registered user, and the second association associates each data element with a subset of users that can access that data element on a data element-by-data element basis. How is that different than a conventional relational database? Your Honor, there's no evidence in this record. I don't know how the encryption would normally occur. Based on this record, all we know is that the notion of storing the data with this granular data element-by-data element basis to allow users to perform their access control on an element-by-element and user-by-user basis, that that was not conventional. The reason we know that, Your Honor... Claim one requires the data associations. The claims don't use the word granular, do they? First of all, claim one requires that the associations occur on a data element basis. Claim two then requires that the user selectively exercises control as to whether to grant or deny access to each data element. Each user exercises control with respect to granting and denying access on a data element-by-data element basis. That's what's required in the claims. One of the problems I have with your argument is it's a little bit all over the place in the following regard. I don't mean that to be as negative as it probably sounded. You're arguing this improves computer functionality because it reduces redundant copies of stored data. It has one person that can make the changes, the changes are then throughout and this overcomes problems with prior art systems. Your patent on its face admits that the prior art already permitted this. It's just that administrators rather than users did it. To the extent that there was any improvement in the computer functionality, the redundancy in the memory issue, that was solved by the prior art because the prior art already allowed for full access control by one person which changed all copies automatically. It's just that that person wasn't the user, it was the administrator. The patent says that expressly. I don't remember which column, but it's in there and I can find it if I need to. You have a lot of arguments about the improvements to the computer functionality. The problem is all of those arguments hinge on single access control and that already existed. The only novelty I see is putting that control in the hands of the user rather than the administrator. I don't see how that does anything to achieve any of the computer functionality improvements that you otherwise cite. Tell me what I'm missing. Just to back up for a second, Your Honor, the patent specification talks about two different buckets of prior art computer implementations. There's the one that you're identifying which is the centralized database in the alumni database example and then there's the other one which is storing the data locally on a user's computer using their applications and then transmitting it electronically to recipients who all store that data in their local databases or their local applications. Those are the two buckets of the prior art, the computer based implementations that existed prior to this invention. This invention is trying to take the advantages of both of them and minimize the disadvantages of both of them. I'm sorry, what am I missing? What is absent from the prior art? The only thing I see absent from the prior art is who? User versus administrator. I don't see anything else that is absent from the prior art. I don't see how that difference makes diddly squat in terms of the improvement of the computer functionality. You better tell me why I'm wrong. Yes, Your Honor. With respect to the alumni database, the central database example, it does not allow the user control. It does not allow any specificity with respect to... Correct, the administrator has full control. All of the same changes can be made, it's just by a different person. It's not the user who authorizes the changes or controls them, it's the administrator. All the same changes globally can be made by a single individual. The changes are made by the database administrator, but the evidence show that it was typically made on an all or nothing basis. You provide your information to the alumni database, for example, and that's it. You're out of the picture. You don't have any ability to control on a granular basis which user is going to see which elements of your data. You're just arguing to me there's a difference between a user and administrator. Once again, I started this by saying I agree with you that that difference exists. That's the only point of novelty. The problem for me is I don't see how that links up to the improvements in the functioning of the computer that you claim. That is where you maybe fall under DDR or BASCOM, where you've got some advantages in ENFISH, where there are some other cases out there that would help you. Those are the ones that are linked to technology that clearly improves computer functionality. I don't see how your technology does that, given your admission that solo centralized database controlled by an administrator was in the prior art. When the only advantages for the computer functionality you discuss are reduced redundancy and minimizing memory storage, whatever, whatever, and all of those are achieved by the alumni example. I don't disagree that you have a point of novelty, the user. I'm just not sure that means anything at all in terms of any improvements to computer functionality, so you therefore don't fall under that umbrella of cases where people got through the 101 gate because of the improvements to the computer. Your Honor, with respect to the example that you're talking about, it is true that the database administrator controls that, but it controls it on an all or nothing basis. That's what is shown in the background of the invention. It's an all or nothing basis. There is no ability to control the data elements individually. It's controlled by the user. It's not hinged on how you store the data elements with the particular associations. Instead, it's based upon, this is this person's information, and I'm going to provide access. How does that, how does the user being in control do anything to reduce redundancy, decrease the amount of memory that it needs to be stored in, versus the administrator being in control? It's different than that problem. This has to do with the user's ability to control what happens. Okay, but you understand that in your brief, one of the claims you make is that our technology is like FastCom, EnFish, and DDR because it improves computer functionality. But the only point of novelty you have is the user doing it, not the administrator, and you've just admitted that doesn't improve computer functionality, at least not the ones you identified in your brief. Well, we identified the other ones as well, Your Honor. With respect to Bascom, you've mentioned Bascom. In Bascom, you filtered Internet content on an ISP server while you allowed the users to customize the filtering schemes. The invention here is very similar. I guess I'm trying to focus. Look, 101 is a crazy space, legally, to try to figure out where each case fits within, and you've thrown so many different cases, but I do see them in silos. I see the improved computer functionality cases in a particular silo. I see them all revolving around this is something new that achieves a particular advantage in the way the computer will operate, and that's one of the arguments you made, and I just don't see that at all in this case. I don't see that this case technically falls within that, given the patent's own admissions and the specification. So is there something different about the point of novelty involving the user versus an administrator that would help you have an inventive concept under Part 2 that doesn't relate to improvements in computer functionality? Because I don't see that. When you look at the scheme, there are a plurality of users that are placing their data in a database management system. But even though it's being placed in that particular location in that database that is not local, the user still has the ability to control the data. That's the critical piece here. Computer functionality is the thing. Is there something inventive about the user having the ability to control it that gets us over a potential abstract ideal problem? It's the way the data is stored on an element-by-element basis. In the example of the database administrator doing it, they don't need to store the data on an element-by-element basis like this. The structure is different. It's not necessary in that environment. Why does the fact that the structure is different result in an inventive concept? What I'm asking you is, what is inventive about this? I understand it's different. A fork with three prongs is different than a fork with four prongs. That doesn't make it inventive. I'm not trying to be rude to you. I'm just trying to find a way to understand your argument that I can fit it into some way that you could possibly win. Your Honor, let me point to the prosecution history. Let's look at the prosecution history and what the Patent and Trademark Office said in its reasons for allowance. But the examiner's statement was issued pre-alice. Yes, Your Honor, that's true. You didn't mention that in your brief. I'm sorry, Your Honor, we didn't mention that it was decided pre-alice. But, Your Honor, it doesn't matter because what the reasons for allowance are doing, it's identifying what's inventive in the claim. We have rapid litigation that, for example, relied on the reasons for allowance specifically to show that the claim combination was not conventional. To the extent that the Patent and Trademark Office says this is what's inventive, then I think under the Supreme Court case law, we need to take a look and say, is what is inventive an abstract concept or isn't it? With respect to what the Patent and Trademark Office said, it said that, in particular, that the ability to exercise granular access control on an element-by-element basis and on a user-by-user basis was something that had not been done before in the prior art. That is our inventive concept. So what's left? We look at that and we say, is that an abstract concept or is that something in addition to the abstract concept? There's a particular way to do that. The Patent and Trademark Office said that it was, and that's the evidence that is in this case that was ignored by the district court judge, along with the declaration evidence that went into detail about exactly what the improvements were and exactly how those associations were made. With that, unless there's other questions, I will reserve the remainder of my time. Okay, Mr. Hamm, we'll give you two minutes. Ms. Keith? Thank you, Your Honors. To start backwards, in terms of the file history, I think perhaps one of the most helpful cases is Intellectual Ventures v. Erie Indemnity Company, issued in 2017, which specifically addressed the issue of whether or not something was addressed during prosecution history in saying that the arguments regarding the prosecution history were unpersuasive because, quote, while claims may not have been anticipated or obvious because the prior art did not disclose the criteria, that does not suggest that the idea of selecting the files is not abstract, citing the Intellectual Ventures v. Symantec decision. Here, the issue of 101 wasn't raised by the prosecuting attorneys or the examining attorney at all. In fact, it was a first office action allowance, which simply stated that they didn't find anything in the prior art. I'm reminded of a quote that I read in a case that said that Einstein, for example, was clearly novel when he came up with E equals MC squared, but that didn't necessarily make it any less abstract as a mathematical formulation. So I don't think that moves the needle. Here, I also agree with Judge Moore's comments that there is nothing here that improves the functioning of the computer. In fact, if we look back to the claims themselves, the claims themselves list only generic components. The network, cited in column 8, lines 31 through 33 in appendix 85. The network device, same citation. The profile at column 8, lines 42 through 44 at appendix 85. And the database management system itself at column 11, lines 44 through 46 at appendix 87, which tells the reader to use an off-the-shelf Oracle database. So these are nothing more than conventional systems and conventional components working in conventional ways. In fact, the claim is agnostic as to where that functioning actually occurs. We hear a lot about this having to be at a centralized server or it has to be somewhere remote from the network device, but the claim actually doesn't require that at all. The claim simply requires that there be a database management system connected to the network. That could just as easily happen on the network device, and therefore no analogy to BASCM is appropriate here. Instead, the claims merely require that you take profile information and break it down into elements. That exact same abstraction was discussed in the content extraction case, as well as the cyber phone and Accenture cases. IV Capital One Bank also specifically talks about it being abstract to associate a profile with a user, and then apply rules to that profile information that's been stored in order to determine who has access to it. Sending to different people based on those rules is also specifically contemplated in the cyber phone, Capital One, and Accenture cases. Finally, the claims here fail because they never explain how to do any of those associations, as was discussed specifically in the two-way media case that recently was issued by this court. Therefore, all we have is a human problem, that of sending different information to different people, being solved in an abstract way without any indications of how, or any computer improvement being made to the functioning of the computer itself. And unless your honors have any questions, that's my presentation. I appreciate it, your honors. Thank you. I'm just going to go back and revisit the issue about the structure.  Support that allows the user to execute the element-by-element and user-by-user access control, and then Claim 2 defines how those associations are made, user-by-user and on an element-by-element basis. Both of those things relate to the structure of that database, just like ENFISH was focused on the structure of the database. This is not a self-referential database, but it still is focused on the structure of the database, how you orient the database, the controls that you place in the hands of the user to allow them to be able to exercise that control. Those are things that are not present in the prior art. The Patent and Trademark Office, in the Reasons for Allowance, indicated that that was inventive. It's not abstract, it's focused on the structure, and for that reason, Step 2 was improperly found, the district court judge in Step 2 improperly found that the claims were purely conventional. They're not purely conventional. How do we know? Look at the intrinsic evidence. Look at the declaration. The district court did not give either of those any weight. The district court did not apply the clear and convincing standard of proof that's required in order to attack an invalidity finding on Section 101. And for that reason, Your Honor, we respectfully request that the court reverse the district court judge with respect to its finding on patent ineligibility. Unless you have any other questions, we'll stop.